### JAMES F. BYBEE, APPELLANT, v. GEORGE SUMMERS AND WM. ELLIS, RESPONDENTS.

INTERLOCUTORY ORDER.—In a suit for partition of real estate, the order or decree of the Court directing the partition or the sale of the premises without further proceedings, is not a final decree, but only an interlocutory order, and is not notice to parties and their privies, etc., under the provisions of § 15, p. 154 of the Statutes of 1855.

LIS PENDENS.—To bind innocent purchasers for a valuable consideration by the proceedings in the suit for partition, under the doctrine of *lis pendens*, the cause should be prosecuted with reasonable dispatch. A suspension of proceedings for more than five years would be an unreasonable delay.

APPEAL from Clatsop County.

On the 10th day of August, 1869, plaintiff (appellant) commenced this proceeding under the provisions of § 377 of the Civil Code, for the purpose of carrying into execution a decree of the District Court for Clatsop County, alleging in his complaint that on the 10th day of September, 1859, one Cyrus Olney commenced proceedings against this plaintiff and one James Taylor for the partition of lots one (1) and two (2) in block fifty-five (55) in the town of Astoria. That on the 13th day of October, 1859, upon the hearing of said cause, it was adjudged by the Court that said Olney was the owner of the undivided three-sixths of said property, this plaintiff of two-sixths, and said Taylor of the remaining one-sixth. And it further appearing to the Court that said lots, owing to the condition of the improvements thereon, could not be divided without prejudice to the owners, the Court decreed the sale of the same. Plaintiff further avers that said Olney afterwards purchased the one-sixth interest of said Taylor by deed bearing date April 4, 1862; and that said Olney conveyed to defendants (respondents herein) his entire interest in said premises by

deed bearing date June 28, 1865.    Plaintiff concludes with a prayer for a decree of the Court below, renewing the order of sale of October 13, 1859, and enforcing the same between the parties to this suit, according to their respective rights, as set out in complaint.

Defendants admit the partition proceedings and order of sale of October 13, 1859, as set out in the complaint, but deny that plaintiff is the owner of said premises or any part thereof as against them, and claim that they are the owners of the whole thereof by deed from said Olney, who, they allege, acquired the same by deed from John McClure, the donee of the Government, under Act of Congress of September 27, 1850; and that the conveyances from the Government to McClure, and from McClure to Olney, were duly recorded.    Defendants further aver that they purchased said premises from Olney in good faith, for a valuable consideration and without any knowledge of plaintiff's claim to any right, title or interest in the same.    No reply was made by plaintiff, and this cause was submitted to the Court below on stipulation of the parties, each party claiming judgment on the pleadings.    The Court below rendered a decree for the defendants, dismissing plaintiff's cause, from which he appeals to this Court.

*Hill, Thayer & Williams,* for Appellant.

*Johnson & McCown,* for Respondents.

By the Court, BONHAM, J.:

Two questions are presented by the pleadings and the arguments of counsel in this case for the consideration of the Court:

First. Was the order of the District Court for Clatsop County, made October 13, 1859, directing the sale of the premises described in the partition suit of Olney against Bybee & Taylor, a final decree in effect, or was it only an interlocutory order?

Second. If the order above referred to was only interlocutory, would the rights of the plaintiff Bybee, to the in-

terest claimed by him in the premises, be protected by the doctrine of *lis pendens?*

It was urged by counsel for appellant, with a good deal of apparent force and reason by analogy, that the finding of the Court of October 13, 1859, determining the rights of appellant and the other parties to the partition suit, to their respective interests in the premises in question, and directing the sale of the same, was in effect a final determination of those questions, and that nothing remained to be done except to enforce that order or decree in the manner and by the means similar to those recognized and usually resorted to by Courts for that purpose. The judgment of the Court in this case, it is claimed, was equally as final and conclusive as the decree of a Court directing the foreclosure of a mortgage and the sale of the mortgaged premises.

But the character of the decision of the Court of October 13, 1859, determining the interests of the parties to the suit in the premises in controversy, and directing the sale of the same, is to be determined, not by the common law, but by the statute in force at the time on the subject of the partition of real estate.

Section 15, on page 154 of Statutes of 1855, reads: "The Court may confirm or set aside the report and, if necessary, appoint new referees. Upon the report being confirmed judgment shall be rendered that such partition be effectual forever, which judgment shall be binding and conclusive—

"1. On all parties named therein and their legal representatives who have, at the time, any interest in the property divided, etc.

"2. On all persons interested in the property who may be unknown, to whom notice shall have been given of the application for partition by publication, as directed by ₰ 5; and

"3. On all other persons claiming from such parties or persons or either of them."

It is claimed by counsel for appellant that "the decree of a Court of competent jurisdiction (Civ. Code, ₰ 723) is not only binding upon the parties, but privies also, including

privies in estate, and the purchaser from one of the parties takes subject to the decree and cannot dispute its binding force."

The principle above enunciated, as applicable to this case, is true if the decree be a *final* one. And it may also be true where the decree is not final, under the doctrine of *lis pendens,* if the suit or proceeding is prosecuted with reasonable diligence and dispatch. But we are clearly of the opinion that the section of the Code above referred to (§ 723) only has reference to a final judgment or decree or a final order.

The inquiry then arises, was the judgment of the District Court for Clatsop County, rendered October 13, 1859, directing the sale of the premises in question, a final judgment? We hold that it was not. The language of the statute of 1855 (§ 15, p. 154) is as follows: "Upon the report being confirmed judgment shall be rendered that such partition be effectual forever, which judgment shall be binding and *conclusive* between the parties and their representatives and successors in interest, by title subsequent to the commencement of the action," etc. This section of the statute declares by implication that until the report of the referees is confirmed by the Court, the proceedings theretofore had shall not, as a judgment, be binding and conclusive, but the decision of the Court is only an interlocutory order. (Freeman on Judgments, §§ 29, 30 and 31.)

Section 31, referred to, in defining an interlocutory decree, reads as follows: "A decree is interlocutory which makes no provisions for costs, and in which the right is reserved to the parties to set the cause down for further directions not inconsistent with the decree already made, and so is a decree which contains a provision for a reference of certain matters, and that all further questions and directions be reserved until the coming in of the report of the referee."

The effect of a judgment or decree in partition, is to be determined by the statute and not by the common law. (*Morenhout* v. *Higuera,* 32 Cal. 289; *Kester* v. *Stark et al.,* 19 Ill. 328.)

In the case of *Kester* v. *Stark et al.,* above referred to,

Spencer Stark, who was not made a party to the partition suit, came in after partition had been decreed by the Court, and commissioners to divide the land had made their report, and filed his answer to the petition, by way of interpleader setting up an interest held by him in the premises sought to be partitioned; and the Court, in speaking of his right to do so, says: "The statute says the interpleader may be filed during the pendency of such suit or proceeding." Any time before the case is finally disposed of, must be considered as during its pendency. Until that time it is before the Court, and entirely subject to its control and jurisdiction, and any previous orders or proceedings may be changed, altered or amended to meet the exigencies of new facts which may be brought before the Court by new parties, by their interpleaders. Here everything was *in fieri* when this interpleader was filed. The suit or proceeding was not yet finally determined, but was still pending, and the interpleader was filed in proper time.

Another test of the finality and conclusiveness of the proceeding of the Court of October 13, 1859, is, whether an appeal might have been taken from the same. We are clearly of the opinion that it could not. and that the order or decision of the Court, directing the sale of the premises, etc., as set out in plaintiff's complaint, does not place the subject-matter of the proceeding *res judicata* as between the parties, or innocent purchasers from them, or either of them.

And, as a further reason in support of the correctness of this proposition, it should be borne in mind that the correct and established practice of our Courts, under the Code, as it was also under the statutes of 1855 referred to, in proceedings for partitions, after the order of partition or sale (as the case may be) is made by the Court, and the referees are appointed to divide or sell the premises in question, to continue the cause for the report of such referees, and for the final determination of the proceeding. On the coming in of the report the same may be confirmed, rejected or modified; and, prior to the confirmation of the report, no question of costs can properly be determined, and no judg-

ment-roll is required to be made up by the clerk under the directions of the statute, and no entry of the cause is required to be made by him in the judgment-lien docket, all of which are tests of the finality of the proceeding.

To hold that the order of the Court below, of October 13, 1859, was in effect a final judgment, and not only binding and conclusive upon the parties to the partition proceeding, under § 15 of the statutes of 1855, but also on all other persons claiming from such parties, or either of them, would be to greatly jeopardize the rights of innocent purchasers of real estate.

It appears from the pleadings in this case that the defendants, on the 28th day of June, 1865, and more than five years after the order of sale of October 13, 1859, was made, purchased from Cyrus Olney the whole of the premises in controversy. And the defendants allege (and it is not denied) that they purchased the same in good faith and for a valuable consideration, and without any notice of appellant's interest therein; and that said Olney then had a clear record title to the premises.

It is true that, *as a rule,* a grantor can convey no higher estate in lands than he has himself. But for the protection of innocent purchasers a system of registration is provided by law, the failure to comply with which may result in the forfeiture or loss of one's estate. It is highly important to the security of titles to real estate that they should be spread out and made patent to the whole world in some kind of legal record. By the established law and practice of registration what was required of these respondents, as prudent and cautious men, when they purchased the lots in controversy in June, 1865? In the first place they ascertained that their grantor, Olney, had a clear record title by deed duly recorded from McClure, and that McClure held a patent from the Government of the United States to the lots in question. The next inquiry which would suggest itself would be to further examine the records of deeds to ascertain if the land in question had been alienated by deed of prior date to another. Then the record-books of mortgages would also be resorted to to ascertain if there were any in-

cumbrances on the land. Next, the judgment-lien docket would be referred to, to determine if there were any incumbrances by judgment, or any adjudications to which the respondent's grantors were parties, which would operate as an alienation or estoppel by record. The investigations thus far are all aided by records, which the law requires to be alphabetically indexed for ready reference. No judgment-roll having been made up, and no entry in the judgment-lien docket having been made of the order of October 13, 1859, declaring the several interests of the parties to the partition proceeding, nothing would be elicited from this quarter to indicate that appellant claimed any interest in the lots in question.

The next and last inquiry on the part of respondents then would be to see if under the doctrine of *lis pendens* their grantor's title was in any way affected. To obtain the desired information, they would inquire of the Clerk of the Court concerning causes pending in the Courts of record of Clatsop County, and examine the dockets of causes pending and the pleadings on file therein.

This brings us to the consideration of the second question involved in this case. Was the sale and conveyance by Olney of June 28, 1865, to respondents, made *pendente lite;* or, in other words, was the interest of Bybee in these lots protected by the doctrine of *lis pendens?* As hereinbefore stated, this inquiry involves no difficulty in its solution. The constructive notice which the law presumes by *lis pendens* is less reliable, we think, than any of the other kinds of constructive notice arising from registration; and in order that a party may be thus protected, the suit should be prosecuted with reasonable diligence and dispatch. (Freeman on Judgments, § 202; Adams' Equity, 5th American edition, 323, note 1, and cases there cited; *Diamond* v. *Lawrence County,* 37 Pa. 353; *Erhman* v. *Kendrick,* 1 Met. Ky. 146; *Ferrier* v. *Buzick,* 6 Clarke's Iowa, 258; 2 Leading Cases in Equity, 171, 175.)

In this case the parties to the partition proceeding not only failed to use reasonable diligence in the prosecution of their suit, but were guilty of gross laches; it appearing,

from the pleadings, that no further step was taken after securing the interlocutory order of sale of October 13, 1859, until August 10, 1869, when the appellant was compelled, in order to consummate his remedy, to come in under § 377 of the Code, and ask for the revival of the proceeding by an original suit.   To give effect to a *lis pendens* the suit should be prosecuted with such diligence as to give the proceeding some kind of notoriety.   After so long a lapse of time little opportunity would be afforded a purchaser to ascertain the condition of a title which he might be looking up, so far as it might be affected by the pendency of legal proceedings; for the reason that papers are liable to be mislaid, and the cause omitted from the docket, and a new clerk might, in the meantime, come in, who would have no personal knowledge of the former proceedings, and the purchaser, under such circumstances, would be very liable to fail to get information of the pendency of the cause.

We think that a fair regard for the rights of an innocent purchaser, under such circumstances, demands that he should not suffer.

Decree affirmed.

[NOTE.—This cause was first submitted at the September term, 1871, and a majority of the Court, on the hearing at that time, were of opinion that the decree of the Court below should be reversed.   An application was afterward made, under the rule, for a rehearing of the cause, for the reason that, owing to the unavoidable absence of the principal counsel for respondents, the case was not fully presented on their behalf.   At the July term, 1873, of this Court, a rehearing was granted, and, after a thorough reargument and mature deliberation, the decree of the Court below was affirmed, all the Justices concurring.]