## DANGERFIELD et al. v. CALDWELL et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1907.)

### No. 667.

**1. JUDGMENT—PARTITION—INTERLOCUTORY DECREE DIRECTING ACTUAL PARTITION—POWER TO SET ASIDE.**

A decree in a partition suit adjudging the property susceptible of partition in kind and appointing commissioners to make the same is interlocutory and not final, and may be reopened, set aside or modified on motion by the court which entered it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 588.]

**2. PARTITION—RIGHT OF TENANT IN COMMON TO IMPROVEMENTS MADE BY HIM—OIL AND GAS WELLS.**

Under the law of West Virginia as established by decision, the sinking of an oil or gas well on land by one tenant in common is a waste for which Code W. Va. 1899, c. 92, § 2 [Code 1906, § 3390], renders him liable in damages to his co-tenants, and hence the sinking of such a well by a tenant in common or under his authority does not give him any right or equity to have the same set off to him as an improvement made by him on a partition of the land.

**3. SAME—PROPERTY SUSCEPTIBLE OF ACTUAL PARTITION—LAND CONTAINING OIL AND GAS.**

A tract of land known to have oil or gas or both under its surface is not property susceptible of partition in kind.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partition, § 221.]

**4. TENANCY IN COMMON—ACCOUNTABILITY TO CO-TENANTS—PRODUCTION OF OIL OR GAS.**

Where a tenant in common in West Virginia is suffered by his co-tenants to sink and operate oil or gas wells on the common property, he is

accountable to them for their share of the net proceeds of such wells, to be apportioned in accordance with their several interests in the property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Tenancy in Common, § 106.]

Appeal from the Circuit Court of the United States for the Southern District of West Virginia.

F. B. Enslow and W. R. Thompson (Vinson & Thompson and Sims & Enslow, on the briefs), for appellants.

Wells Goodykoontz and C. W. Campbell (Marcum & Marcum and Sheppard, Goodykoontz & Scherr, on the briefs), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and BRAWLEY, District Judge.

PER CURIAM. The decree of November 13, 1902, was not a final decree, as the court below did not by that decree complete its adjudication of the cause. The decree appealed from, entered September 22, 1905, equitably disposes of the property in controversy, and is without error. The opinion of the court below has our approval. It reads as follows:

KELLER, District Judge. This case has been in this court for a number of years, and has had a somewhat peculiar history. That the case itself is properly in this court has been heretofore decided, and there is no necessity to consider that question again.

The case is now before me upon exceptions to the report of the master as to the account for rents, issues, and profits, and upon a petition of Rebecca C. Davis, one of the defendants, and the owner of a three-eighths interest in the land in suit, asking the court to set aside the decree entered on the 13th day of November, 1902, decreeing the land to be susceptible of partition in kind, and also to set aside the report of the commissioners appointed to make said partition, which report has been filed but never confirmed.

The history of the case seems to be that many years ago G. R. C. Floyd instituted a suit against one Gray's heirs in connection with this land, in which one Mitchell G. B. Davis was employed, upon a contingent fee of one-half of the recovery, to represent the interests of the defendants in that suit, who are the plaintiffs in this. After various mutations that litigation resulted in a final decree adjudging said G. R. C. Floyd to be the owner of one undivided fourth of the land now in controversy, and these plaintiffs (the defendants in that suit) to be the owners of the remaining undivided three-fourths. Under their agreement with Davis, he became the owner of an undivided three-eighths interest in the land, for which he subsequently received a deed from Gray's heirs, and which, at his death, he devised to his daughter, Rebecca C. Davis, one of the defendants in this suit.

It would appear that, during a part of the period of the existence of the old suit of G. R. C. Floyd v. A. S. Gray's Heirs in the circuit court of Logan county, there was also pending in said court a creditors' suit against said G. R. C. Floyd, which finally resulted in a decree of sale of Floyd's interest in these lands, at which sale his said interest was purchased by Wilkinson & Ellison, who sold it to J. L. Caldwell and T. J. Davis, two of the defendants in this suit. It appears from such portions of the records of these old suits as have been filed here that in some way, in the suit of G. R. C. Floyd v. A. S. Gray's Heirs, proceedings were taken looking to a partition of the lands, which proceedings, after the purchase of the Floyd one-fourth interest by Caldwell & Davis, were stopped, and a decree was entered on the 31st day of July, 1897, dismissing the suit and providing for the payment of the costs. I have already decided in this case that the entry of a subsequent order under the style of "J. B. Wilkinson v. A. S. Gray's Heirs" did not have the effect of reinstating this old suit as claimed by defendants Caldwell & Davis. As

·far back as 1882, one A. Allen acting under a petroleum lease from G. R. C. Floyd, bored a well upon the tract in controversy and struck· a gas well, known in the suit as "Well No. 1," with which apparently nothing was done until Caldwell & Davis caused it to be plugged. At the time ·this lease was made, the title to the land on which the well was bored was not in G. R. C. Floyd, ·and· it was long thereafter determined that he had a one-fourth undivided interest in it. In 1892 Floyd attempted to make another oil lease to Dimick .& Gormley, which lease was declared invalid by the court in the suit of ·Wilkinson v. G. R. C. Floyd, as having been made pendente lite. On September 9, 1893, the plaintiffs in this suit undertook to make a lease for oil and gas to the New Domain Oil & Gas Company, under which paper what is known as "Well No. 2" was bored by Guffy, Queen & Hurd, which well seems to have been plugged but never used until taken possession of by the defend- .ants Caldwell & Davis.

The question has been raised in this suit as to whether these two so-called "leases," under which these wells were bored, are or are not forfeited, a question which, in the view I am compelled to take of the case, does not seem necessary to be decided, as I come to the conclusion that they were never valid. Before, however, proceeding to a discussion of this feature of the case, it becomes necessary to consider the matters raised by the petition of Rebecca C. Davis to set aside the decree of partition of November 13, 1902, and the report of the commissioners appointed thereunder, and the first question to be considered is whether or not that decree is final or merely interlocutory, as in the former case the decree cannot be set aside, and defendant must rely for relief upon an appeal, whereas in the latter case this court can correct the error if one has been made. In a large number of cases it has been held that the judgment in a suit for partition, directing a division of the property or a sale thereof, is not a final decree, but merely an interlocutory order. Bybee v. Summers, 4 Or. 354; Daleschal v. Geiser, 36 Kan. 374, 13 Pac. 595; Beebe v. Griffing, 6 N. Y. 464; Pipkin v. Allen, 29 Mo. 229; Medford v. Harrell, 3 Hawks (N. C.) 41. And see, also, Seay v. White, 5 Dana (Ky.) 555, where it was held that a final decree at the time of appointing a commissioner for the division of land in a suit for partition is erroneous. See, also, Ivory v. Delore, 26 Mo. 505, and Lee v. Henderson, 75 Tex. 190, 12 S. W. 981, holding that such orders are revocable. It is true that, apparently at least, the case of McFarland v. Hall's Heirs, 17 Tex. 676, holds that such a judgment is in so far final that it is appealable, but it would seem that in the case cited this was largely held upon the ground that all the labor between the rendition of the interlocutory and the final judgment would be lost in case of a successful appeal, and hence the utilitarian aspect had its weight. Under ·some of the state statutes, as California, Michigan, Indiana, and perhaps others, the right of appeal from such an interlocutory decree is conferred, and, where so conferred, the judgment can only be reviewed, in a proceeding in the state courts, ·by a direct appeal, without waiting for the final decree. I have no doubt that, in general, such a decree is interlocutory, and, as such, may be reopened without the formality of a bill of review, but on mere motion or petition of the party aggrieved. See Willimantic Linen Co. v. Clark Thread Co. (C. C.) 24 Fed. 799; Pulliam v. Pulliam· (C. C.) 10 Fed. 53.

In the case at bar the defendant Rebecca C. Davis was represented by coun-sel, but apparently only in a perfunctory way until very recently. The de-·cree adjudging the land susceptible of partition and directing the manner of ·such partition was presented to the court in term time by counsel for the plaintiffs, and was directed by the court to be entered without requiring no-tice to be given to counsel for the defendants, but with the understanding that the principles established by the decree were not denied, 'and I think that ·at the time this was the attitude of the parties. However that may be, I am now satisfied that the decree was erroneous, and· that the court erred in di-recting its entry, independent of the facts now set up to show that the land is ·not a proper subject of partition in kind.

·' The bill and the decree entered on November 13, 1902, were both drawn by ;counsel for the plaintiffs, and proceeded upon the idea that in any division of the property the wells bored should be assigned to the interest under whose .direction or ·license the same were put down, apparently upon the theory that

the same were improvements upon the land. In the absence of any argument at the time the said decree was drawn, and without any information then appearing to show that for other reasons the land was not properly partible, the court, rather hastily, I confess, assumed that the view of counsel who prepared the decree was correct as to the assignment of these wells, and directed the entry of that decree without an examination of the question in the light of adjudicated cases, or, indeed, of the principle upon which assignment of improvements has been made. Upon an examination of the subject I am quite confident not only that these wells are not only not improvements which should be set off to the owners of the interests under whose auspices they were put down, but that their sinking and operation constituted waste which is prohibited to a tenant in common, and for which he should account; and, furthermore, that the finding of gas upon the property tends to make it evident that the land cannot equitably be divided in kind. That it is waste in a tenant in common to take petroleum oil from the land, for which he is liable to his co-tenants to the extent of their right in land, see Williamson v. Jones, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891. And the same doctrine is held as to other fugitive substances. Ruffners v. Lewis' Ex'rs, 7 Leigh (W. Va.) 720, 30 Am. Dec. 513. Of course, under the common law the tenant in common could not be impeached of waste, but by section 2, c. 92, of the Code of West Virginia of 1899 [Code 1906, § 3390], it is expressly provided that "if a tenant in common, joint tenant, or parcener commit waste, he shall be liable to his co-tenants, jointly or severally, for damages." We have also in section 14, c. 100, of the Code of West Virginia, 1899 [Code 1906. § 3470], a provision to the effect that, if one joint tenant or tenant in common receives more than comes to his just share or proportion, he shall be liable to his co-tenants in an action of account. It is quite evident that these two sections do not mean the same thing or refer to the same conditions, and in Williamson v. Jones the Supreme Court of Appeals of West Virginia has construed the latter to refer to the case where one joint tenant or tenant in common has received more than his just share of rents and profits from the legitimate use of land, but that this has no reference to waste, and does not license waste. The court holds this section to be applicable to the situation where one joint tenant or tenant in common takes possession of a lawfully opened well or mine (that is, one not opened by a part owner during the tenancy, but open at the time the tenancy arises) and works it, taking more than his share of the revenues therefrom. Speaking on the subject of the opening of such wells during the tenancy by one tenant in common, the court in Williamson v. Jones, supra, says (page 567 of 43 W. Va., page 413 of 27 S. E. [38 L. R. A. 694, 64 Am. St. Rep. 891]): "There stands section 2, c. 92, branding it as a tort, and giving action for it, and it applies though one claim title to the whole and commit waste. 28 Am. & Eng. Enc. Law, 895. As owner of three-tenths in fee, Jones could not bore for oil, any more than a stranger, because the act, whether done by a co-tenant or a stranger, is a wrong. For this purpose he was a stranger, so far as the wrongful character of the act is concerned. He had right to possession for residence or other ordinary use working no injury to the inheritance, and therefore we term his act waste, not technically trespass as done by a stranger. 'Waste is an injury to the freehold by one rightfully in possession.' 1 White & T. Lead. Cas. Eq. 1011. * * * He first pierced the soil in quest of this fluid of fabulous wealth. He had no right to pierce it to get even his three-tenths of the oil. If he chose to do so, of every gallon seven-tenths belonged to the owners of the seven-tenths in the land, because it had been part of their soil. These considerations repel all idea that as owner of the fee in three-tenths he could penetrate the soil and convert to his sole use, without accounting, all the oil raised." The above extract is sufficient to show that the highest court of the state holds that the sinking of such a well by one co-tenant is waste for which an action by his co-tenants would lie. Under this holding it is clear that the sinking of the Allen well under lease from Floyd, and the Guffy, Queen & Hurd well under lease from the plaintiffs, were both acts of waste for which action by the co-tenants would lie, for it is to be remembered that the provisions of chapter 92, § 2, were in existence long before the lease to Allen. It is also plain that the sinking of

such a well is as much waste if done under lease from one co-tenant as if done by the co-tenant personally.

It would seem that enough has been said to show that in a case like that at bar, if the land were readily partible, there would be no reason for a court of equity to hold that a well put down under authority of one co-tenant should be directed to be laid off to him. To so direct is to countenance and further the original wrong done to his co-tenant in causing the well to be sunk.. But in the case at bar it is not necessary to go into the question, because it seems evident that the land is not fairly partible. The theory upon which such a holding is made is that the substances under the surface, and which form a part of the realty, can only be fairly divided when their exact location, extent, and value can be and are ascertained. Kemble v. Kemble, 44 N. J. Eq. 454, 11 Atl. 733. Thus, in Hall v. Vernon, 47 W. Va. 295, 34 S. E. 764, 81 Am. St. Rep. 791, it was held that oil and gas (being fugitive) are impartible, and that partition thereof can be made only by a sale and division of proceeds, and that a judicial partition thereof by assignment of the oil and gas under sections of the surface is void. Of course, that case differed widely from this, inasmuch as the partition there sought to be made was of the oil and and gas only, and not of the surface as well. In Rice v. Freeland, 12 Cush. (Mass.) 170, it was held that land valuable only as an ore bed could not be partitioned in kind. It is undoubtedly true that it is within the power of a court of equity to order the partition in kind of a tract of land known to have oil or gas, or both, under its surface. but the question will always arise as to whether in the interest of all the parties such partition can and ought to be made. In the case at bar we may assume that there is gas under the entire tract of land sought to be partitioned, and yet find insuperable difficulties in making an equitable partition. In the first place, as I have said, it will not do to permit the successors of Floyd, and the plaintiffs, to reap the advantage of their own wrong by having the wells put down under their auspices assigned to them without taking their value into account, because they had no right to put them down in the first place. Again, a division of the land in such fashion as to assign one of these wells to one interest and one to another interest has, as shown by the plot filed by the commissioners, the effect of so butchering the land for all practical purposes as to destroy greatly the value of the several parts for all purposes except the production of gas, and even for that, assuming that gas may be obtained anywhere on the tract, to burden the portion assigned to Rebecca C. Davis with the practical necessity of laying pipe lines over the other portions, and to burden the other portions with rights of way for that and other purposes. Again, it is shown that coal underlies at least a considerable portion of this land, and the division sought to be made unquestionably vastly reduces the value of the land for mining purposes. The only place from which this coal can be worked, according to testimony given by Dr. Payne in the condemnation and suit of N. & W. Ry. against the owners of this land, is from Lower Burning creek, and the only place a coal tipple can be erected is at the lower end of this property. It is further stated by Dr. Payne that at the upper end of this coal property a fault of considerable, but undefined, extent makes the coal less valuable.

Under all the circumstances, I have come to the conclusion that the report of the commissioners subdividing this land for partition among the co-tenants should not be confirmed, and have further reached the conclusion that the land is not fairly partible owing to the various matters which I have mentioned. Under the provisions of section 3, c. 79, of the Code of West Virginia of 1899 [Code 1906, § 3182], it is especially provided that in any case for partition, if the interests of those who are entitled to the subject or its proceeds will be promoted by a sale of the entire subject, the court may order such sale and make distribution of the proceeds of sale. I am strongly of the opinion that this is a case for invoking the provisions of that statute.

There is one other matter to be disposed of at this time. Exceptions were filed to the report of the master in chancery, John T. Graham, Esq. The plaintiffs have excepted to the findings of the master upon the ground that, as to well No. 2, Caldwell & Davis, in taking charge of and disposing of the output of that well, had ousted them and are in no better position than a mere-

trespasser, and must therefore account to them for the real value of the gas taken form said well No. 2, and not merely for the receipts from it. They further except because the master reports in favor of the participation of Rebecca C. Davis in the fund arising from the operation of this well. In my view, these exceptions must be overruled. It is doubtless true, as heretofore held by me, that the sinking of each of these wells was waste, and a wrong by the co-tenant doing the act or causing it to be done; but it never was true that the commission of such wrong could or did create a property right in the wrongdoer, and hence it is not correct to say that well No. 1 belonged to Caldwell & Davis, or that well No. 2 belonged to the plaintiffs, but these wells, in common with all the real estate, belonged to all of the owners of the property in proportion to their interest, and therefore, in my view, when one co-tenant took charge of these wells and marketed the output, he became a trustee for his co-tenants, and, where they suffered him to proceed unchecked, they are only entitled to a fair accounting for what he actually received, less his legitimate expenses in connection with his business. I may here say that I do not regard these wells as in any sense improvements upon this property; no more so than a dry well would be. They have no value aside from the special purposes for which they were made, and are held in Williamson v. Jones, supra, not to be improvements, but, where paid for (as in that case) by a co-tenant, to be a part of the expense of production for which the co-tenant was entitled to be repaid. Here the wells were not sunk at the expense of any co-tenant, and none of them are entitled to be reimbursed for that expense. I think the master was right in the method of his accounting, except that his account should be recast so as to divide the net receipts of both wells between the parties hereto in the proportion of one-fourth to Caldwell & Davis, three-eighths to the plaintiffs, and three-eighths to Miss Rebecca C. Davis. As this involves a simple calculation, the account will not be recommitted, but counsel are requested to embody the results of the change in the decree to be prepared; or let the change in the report be made at bar, and the report after change may be confirmed.

A decree may also go for the sale of the property under such proper conditions as will ensure a fair sale after due advertisement.

Affirmed.