FORTNEY *v.* TOPE.

1. PARTITION—GOOD-FAITH PURCHASERS OF LAND.

In suit for partition of 40 acres of land by parties claiming to own undivided one-third interest, record *held,* to sustain finding of trial court that plaintiffs were good-faith purchasers of said interest (3 Comp. Laws 1929, § 14995 *et seq.*).

2. SAME—MINES AND MINERALS—OIL AND GAS LAND.

Where it is known that land bears oil and gas, following similar rule applicable to solid minerals, it is generally held that there can be no partition of land by metes and bounds, but that partition must be made by sale and division of proceeds.

3. SAME—METES AND BOUNDS—SALE AND DIVISION OF PROCEEDS.

Where land lies in oil and gas field, and, although there are no wells on it, there are producing wells within 330 to 500 feet of it, and therefore partition by metes and bounds would be liable to result in great injustice, partition is denied, and, instead, land is ordered sold and proceeds divided (3 Comp. Laws 1929, § 14996).

POTTER, J., dissenting in part.

Appeal from Midland; Hart (Ray), J. Submitted January 6, 1933. (Docket No. 62, Calendar No. 36,918.) Decided April 4, 1933.

Bill by Delbert Fortney and others against Robert L. Tope and others for partition of realty. Cross-bill by defendants against plaintiffs and others to quiet title. Decree for plaintiffs. Defendants appeal. Affirmed in part, reversed in part, and remanded.

*Arthur W. Penny,* for plaintiffs.

*Charles H. Goggin* and *James E. Ryan,* for defendants.

Sharpe, J.   The bill of complaint in this case was filed to secure the partition of 40 acres of land in the county of Midland under 3 Comp. Laws 1929, § 14995 *et seq.*   Plaintiffs claim that they together own an undivided one-third interest therein, and that the defendants own the other two-thirds.   The defendants deny that plaintiffs have any interest therein, and by cross-bill seek to have the conveyances under which plaintiffs claim declared void and removed as a cloud upon their title.

The records in the office of the register of deeds disclose that the title rested in Samuel I. Harrison on March 27, 1902.

### *Plaintiffs' Record Title.*

Deed, Samuel I. Harrison and wife to David E. Harrison, undivided one-half interest, dated March 27, 1902, recorded February 12, 1903.

Assignment of residue of David E. Harrison estate to Regina K. Harrison, his widow, and children, Don E. and Hazel O., recorded November 24, 1928.

Don E. Harrison to E. E. Robinson, quitclaim, dated August 22, 1931, recorded August 25, 1931.

E. E. Robinson to G. M. Porter, quitclaim, dated September 17, 1931, recorded September 26, 1931.

Hazel O. Strong, *née* Harrison, to G. M. Porter, quitclaim, dated August 22, 1931, recorded September 3, 1931.

G. M. Porter and wife to Delbert Fortney, warranty deed of undivided one-third interest, dated September 17, 1931, recorded September 26, 1931.

### *Defendants' Record Title.*

Samuel I. Harrison and wife to Regina K. Harrison, the wife of his brother David, quitclaim of en-

tire 40, dated July 31, 1905, recorded October 12, 1905.

Regina K. Harrison to P. J. Gruber, warranty deed, dated October 19, 1911, recorded March 18, 1912.

P. J. Gruber and wife to William H. Yats and Millie Yats, his wife, warranty deed, dated January 12, 1915, recorded January 13, 1915.

William H. and Millie Yats to Joseph Grover, warranty deed, dated October 29, 1915, recorded November 11, 1915.

Myra and Marion Grover, as sole heirs-at-law of Joseph Grover, to Robert L. Tope, defendant, quitclaim, dated August 17, 1931, recorded August 19, 1931.

After submission of the proofs, the trial court found that plaintiffs collectively were the owners of a one-third interest in said land, and that the defendants were the owners of the remaining two-thirds. He further found that partition between the plaintiffs and defendants should be had ''by metes and bounds;'' the plaintiffs' one-third to be set apart ''in square form.'' The decree entered pursuant to such finding provided:

''That partition of said premises shall be made in kind by commissioners hereafter appointed by this court pursuant to the statute in such case made and provided, said commissioners allotting to said plaintiffs, quality and quantity relatively considered, one-third of said land, said commissioners designating the parcel so allotted to said plaintiffs by permanent monuments pursuant to the statute, and if found equitable and practical, such commissioners shall parcel out such parcel passing to said plaintiffs in square form and make report to this court of their findings and doings in the premises pursuant to the statute in such case made and provided.''

The defendants by cross-bill prayed that Eunice E. Robinson, G. M. Porter, and H. J. Mulder be made parties plaintiff and that they and the plaintiffs be decreed to be liable to the defendants for their "unlawful and fraudulent acts" in hindering and delaying the defendants in the development of their property. An order was entered making these parties plaintiffs, and an answer to the cross-bill was filed by them and the other plaintiffs. In its decree the court dismissed the cross-bill. The defendants have appealed.

By deed from Samuel I. Harrison, his brother David acquired a one-half interest in this land in 1902, and his wife, Regina K., by deed acquired the other one-half interest in 1905, and they were the owners thereof as tenants in common until 1911, when Regina, by warranty deed, conveyed the entire interest therein to Gruber, although she then owned but a one-half interest.

Defendants' counsel seem to concede that under the record of conveyances the plaintiffs are the owners of an undivided one-third interest in this land. They state the question involved in this respect to be: Were the plaintiffs—

"or any of them, *bona fide* purchasers and legal owners of a one-third interest, as tenants in common, in the 40 acres in question?"

They rely on the rule of law as stated in 39 Cyc. p. 1687:

"The essential elements of a '*bona fide* purchase' of land are: (1) The payment of a valuable consideration; (2) good faith and absence of purpose to take an unfair advantage of third persons; and (3) absence of notice, actual or constructive, of outstanding rights of others."

And in 20 R. C. L. p. 346:

"Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts. A person has no right to shut his eyes or his ears to avoid information, and then say that he had no notice; he does wrong not to heed the 'signs and signals' seen by him. It will not do to remain wilfully ignorant of a thing readily ascertainable."

It appears that in the spring of 1931 oil was discovered on property about a mile and a half distant from this 40, and there was much activity in securing titles to, or leases of, nearby lands. The plaintiff Fortney and the defendants Tope and Talbot were interested. Fortney was then acting as superintendent for the Columbia Oil & Gas Company. He testified that on September 12, 1931, he met G. M. Porter in the office of the register of deeds in Midland and had some talk about the one-third interest Porter claimed to have in this 40 acres; that as a result thereof a written agreement was prepared and executed wherein he agreed to pay Porter $1,500 therefor; that Porter agreed "to furnish a merchantable abstract certified to date, including tax statements of said premises;" that he at that time gave Porter his check for $100 and $300 in cash; that Porter furnished him an abstract of title to the 40 acres certified to September 16th; that he took it to Carl Holbrook, an attorney at Clare, and on September 21st received a written opinion from him

thereon, and that he later got a warranty deed from Porter and paid him the balance due therefor. There was objection to the written opinion of Mr. Holbrook as to the title, but it was received in evidence. He stated therein that Porter and E. E. Robinson each owned an undivided one-sixth interest in the property, and that Tope apparently owned the balance thereof. The deed from Robinson to Porter had not then been recorded.

Defendants rely on the fact that the deeds recorded as shown by the abstract which purported to convey the entire title for so many years "should have attracted the attention and aroused the suspicion" of the purchasers of this undivided interest. Had not the abstract shown that the grantor, Samuel I. Harrison, under whose title all parties claim, himself created a divided interest in the land by his conveyance of an undivided half thereof to his brother on March 27, 1902, and thereafter but quitclaimed his interest therein to his brother's wife on July 31, 1905, a different question would be presented. There are, we think, few persons unfamiliar with abstracts of land who are willing to rely on their own judgment as to the sufficiency of a vendor's title thereto. They very properly submit the abstract to an attorney, and, if prudent, do just as Fortney did, require a written opinion thereon. Mr. Holbrook had practiced law at Clare for 10 years, during most of which time he had been prosecuting attorney of the county. His integrity is not questioned. He had the abstract in his hands for several days, and testified that in his judgment the report made to Fortney was justified by the entries thereon.

This 40 acres was wild and uncultivated. There was no one living on it. It apparently had little

value until land in the vicinity began producing oil. Taxes for the years 1919 to 1924 had become delinquent, and sale had therefor in 1929. It appears that Mr. Tope had secured a conveyance from the purchaser, paying him $1,250 therefor. No reliance is placed upon the effect of this deed. He also paid the heirs of Joseph Grover $100 for their interests in the property. It also appears that he had secured an abstract of title to the land, but it does not appear that he submitted it to an attorney for an opinion thereon. Had he done so, it seems probable that a doubt would have been expressed as to whether the quitclaim from the Grover heirs conveyed the entire interest in the land, as it assumed to do.

Much parol evidence was submitted, but so far as it bears upon the issue under consideration it was so contradictory as to have but little weight. In our opinion the record sustains the finding of the trial court "that the plaintiffs were good-faith purchasers in the land in question."

This suit was brought for partition. 3 Comp. Laws 1929, § 14996, reads, in part, as follows:

"Any one or more of the persons so holding lands, may institute a suit in the circuit court for the county in which the lands lie, by a bill in equity, for a division, or partition thereof, according to the respective rights of the parties interested therein, and for the sale of such premises, if it shall appear that the partition thereof cannot be made without great prejudice to the owners."

Defendants insist that partition will result in "great prejudice to the owners," and in this we think they are right. It is apparent that this land is valuable for oil and gas; that the surface rights are of little value compared therewith. Mr. Fort-

ney, one of the plaintiffs, testified that in his judgment the 40 acres were worth $20,000. He also testified that, at the time of the hearing, in August, 1932, there were three producing wells near this land; two of them distant about 330 feet and the other about 500 feet.

In Mills & Willingham, Law of Oil & Gas, p. 272, it is said:

"Where it is known that the land bears oil and gas, following a similar rule applicable to solid minerals, it is generally held that there can be no partition of the land by metes and bounds; that partition must be made by sale and division of the proceeds. And the same rule has been applied to partition of oil and gas leases."

The rule thus stated is supported by decisions of the courts in States where the question has been presented. See *Gulf Refining Co.* v. *Hayne,* 138 La. 555 (70 South. 509, L. R. A. 1916 D, 1147, Ann. Cas. 1917 D, 130); *Hall* v. *Vernon,* 47 W. Va. 295 (34 S. E. 764, 49 L. R. A. 464, 81 Am. St. Rep. 791); *Preston* v. *White,* 57 W. Va. 278 (50 S. E. 236); *Dangerfield* v. *Caldwell,* 81 C. C. A. 400 (151 Fed. 554).

The injustice of a partition by metes and bounds is well stated in *Gulf Refining Co.* v. *Hayne, supra* (p. 561):

"It might be a most serious loss to one or more of the co-owners to divide a piece of oil land into three parts, and award one part to each owner. A lot without oil under the surface falling to one co-owner would work incalculable damage to him to whom it was awarded, due entirely to the consequence of dividing the land. The courts cannot compel such a division or partition."

Plaintiffs' objection to a sale rests largely upon the claim that they are without funds to protect

their interests, and defendants "doubtless would procure the interests of the plaintiffs at a mere pittance." But a much greater injustice might be done if the parcel allotted to them be found to have no oil thereon and the remainder be productive. This 40 acres lies in the oil and gas field of that part of the State, and it seems clear that on a sale buyers will be present and the plaintiffs be assured of a reasonable price for their interest in the property.

The decree adjudging the plaintiffs to be the owners of an undivided one-third interest in the land is affirmed. The provision for its partition is reversed, and one may be here entered providing for a sale and remand to the circuit court to make provision therefor. No costs will be allowed.

McDONALD, C. J., and CLARK, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred with SHARPE, J.

POTTER, J. (*dissenting in part*). I find no fault with the statement of facts made by Mr. Justice SHARPE. I am not in accord with his opinion as to the necessity of selling the land. The record indicates, in the opinion of one of the plaintiffs, the land in question is in an oil field. There are no wells on ′ the land in question. No well or wells thereon have ever been attempted. The rule in relation to partition of land of this kind is different from that applying to land upon which there are wells.

"There is no doubt that an action of partition lies to divide undeveloped and supposable oil or gas lands, just as it does in case of lands containing solid minerals; for it cannot be known, owing to the peculiar character of gas or oil as a mineral whether the land to be divided is actual gas or oil lands; and to refuse partition on the theory that it may be, would be for the court to enter upon the domain of

mere speculation or supposability." 2 Willis' Thornton, Oil & Gas, § 437, p. 744.

The same rule is recognized in 47 C. J. p. 292, and by the court in *Rainey* v. *H. C. Frick Coke Co.,* 73 Fed. 389, where partition was granted, the court saying:

"The subtile character of the subterranean elements in question are always, in mining operations, elements of more or less uncertainty and possible danger, and we avoid all risk of doing harm to the land we have undertaken to partition by staying the hand of all parties until we have finished our duty in the premises."

In *Woods* v. *Rolls* (Tex. Civ. App.), 268 S. W. 988, partition of the premises was granted and an appeal taken. In sustaining the right of plaintiffs to partition and denying sale, it was held they were entitled to it—

"Especially in view of the fact that the record shows that no drilling has been done upon the land to develop oil and gas, and therefore it cannot be determined whether or not such minerals can be found thereon; or whether or not one portion of the land is richer than the other portions in such materials. A more difficult question would arise if a part of the land had already been drilled and oil and gas in paying quantities had been discovered."

The same rule has been applied to the partition of a leasehold interest in lands suspected to have oil and gas thereon. *Black* v. *Sylvania Producing Co.,* 105 Ohio St. 346 (137 N. E. 904). The question of the partition of suspected oil and gas lands was before the court in *Henderson* v. *Chesley* (Tex. Civ. App.), 273 S. W. 299, in which case the rule of *Woods* v. *Rolls, supra,* was approved, and the court quoted with approval from Thornton on Oil & Gas the language above. The rule laid down by Thorn-

ton in relation to oil and gas is applicable to mines which, when open, are in their nature indivisible, and partition may only be made by ordering a sale of the mines and dividing the proceeds.

"These were instances where the mines had been opened. Where the mine has not been opened, the right to partition of land having upon it solid minerals has been recognized; and it will be decreed, unless the mineral is so situated that a probably fair division of it cannot be made by dividing the surface of the land. All things being equal, as between a partition and a sale, a partition will be decreed." 2 Willis' Thornton, Oil & Gas, § 436, p. 742.

This is the rule of *Hughes* v. *Devlin,* 23 Cal. 501; *Rainey* v. *H. C. Frick Coke Co., supra; Wilson* v. *Bogle,* 95 Tenn. 290 (32 S. W. 386, 49 Am. St. Rep. 929); *Conant* v. *Smith,* 1 Aikens (Vt.), 67 (15 Am. Dec. 669); *Kemble* v. *Kemble,* 44 N. J. Eq. 454 (11 Atl. 733); *Ames* v. *Ames,* 160 Ill. 599 (43 N. E. 592), which cases are cited with approval in *Henderson* v. *Chesley, supra,* which quoted with approval 2 Willis' Thornton, Oil & Gas, § 436, p. 742.

"Partition of oil, gas, and mineral lands which have not been explored or developed may ordinarily be made by dividing the surface, it being assumed, in the absence of any contrary showing, that each portion of the land contains an equal amount." 47 C. J. p. 501.

"Where there is no convincing reason for supposing the land to be oil-bearing, there is no reason apparent why the oil and gas rights thereof should not be partitioned by metes and bounds, or why the lease thereon should not be divided between the owners upon an acreage basis." Mills & Willingham, Law of Oil & Gas, p. 272.

The great weight of authority sustains the rule contended for. There is nothing in the statute in

this State changing the rule. In *Benedict* v. *Torrent*, 83 Mich. 181 (11 L. R. A. 278, 21 Am. St. Rep. 589), this court said:

"If the lands can be divided, this must be done. No authority to sell when partition can be had is given. The law, common and statutory, has always most carefully protected the owners of land in their right to preserve and enjoy it as they desire. This is an inherent right of which they can only be deprived on the ground of public necessity, by sale upon execution, and in certain cases of partition. This partition statute further provides that if the commissioners report that the lands held in common cannot be divided without great prejudice to the owners, and if the court shall be satisfied that such report is just and correct, it may then order a sale; but if any portion of the lands can be divided without great prejudice to the owners, it must be partitioned, and only those portions sold which cannot be divided. * * * It is not sufficient under this statute that the lands cannot be divided without prejudice. Great prejudice must exist in order to warrant a sale. It is therefore entirely clear that the only decree which the court could render in partition proceedings would be a division of these lands as an entirety between the tenants in common, because no difficulty whatever exists in effecting a division."

This rule is applicable to the case in question. A forced sale deprives the party opposed thereto of his property, in kind, which he may desire to retain.

The rule is:

1. Oil, gas, and mineral *producing* lands may not ordinarily be partitioned in kind, for the reason that inequitable results may follow, and that equality which lies at the foundation of equity be disturbed.

2. The law deals with realities, not with speculative supposibilities. A mere suspicion that land, from its location, may contain oil or gas, constitutes no legal or equitable excuse for ordering a sale thereof; the presumption of oil or gas existing in proportion to acreage prevailing in the absence of exploration or development and a partition in kind being the rule.

3. Much of the agricultural land of Michigan is under lease for oil and gas. It would contravene the established policy of the State to hold such lands could not be partitioned in kind but must be sold because someone suspected oil or gas to exist thereon and procured and paid for a lease thereof.

The decree of the trial court should be affirmed, with costs, without modification.